ALICE E. TAYLOR *vs.* IRENE GOWETZ & another, executors (and a companion case[1]).

Barnstable. May 5, 1959. — May 29, 1959.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Contract,* Separation agreement, Construction. *Law or Fact. Practice, Civil,* Exceptions: whether error harmful. *Error,* Whether error harmful.

Under a separation agreement made in contemplation of a divorce as a "complete and final settlement of all matters relating to support, alimony and property rights" and providing that the husband was to pay or cause to be paid to the wife a stated sum monthly "if and so long as . . . [she] is living and remains unmarried," that upon his death while she was living and unmarried she should be paid a certain

---

[1] The companion case is by Chester F. Pero, trustee, against the same defendants.

sum from proceeds of life insurance or from his estate, and that she released all rights in his property and relinquished claim to any interest in his estate or right to act as his personal representative in case of his death, her right to the monthly payments did not terminate upon his death some years after the divorce but would continue until her death or remarriage. [298–300]

Provisions of a separation agreement made in contemplation of a divorce, that the husband was to pay or cause to be paid to the wife a certain sum monthly until her death or remarriage and that in case of his death while she was living and unmarried she should be paid "not less than a [stated] net amount" from the proceeds of insurance on his life or from his estate if that amount had not been provided through life insurance, entitled her to the stated "net amount" upon his death while she was living and unmarried in addition to the monthly sums paid and to be paid. [300]

Error, if any, in the admission of certain evidence in an action involving only the question of law of the proper construction of an unambiguous written contract was not prejudicial. [300]

Two ACTIONS OF CONTRACT. Writs in the Superior Court dated October 11, 1956.

The actions were heard and reported by *Dewing, J.*

*James S. Gratton,* (*Zipporah B. Wiseman* with him,) for the defendants.

*Francis H. George,* for the plaintiffs.

SPALDING, J. These are two actions of contract to enforce a separation agreement made on May 15, 1946. The parties to the agreement were Alice E. Taylor and Reginald L. Taylor, husband and wife, and two trustees, Pero and Smith, the former acting for the wife and the latter acting for the husband. The agreement recites that Alice and Reginald have a minor child, that they are living separate and apart, that Alice had instituted divorce proceedings against Reginald in the Probate Court for the county of Worcester, and that both desire by the agreement to "make a complete and final settlement of all matters relating to support, alimony and property rights." The agreement includes a detailed scheme for the disposition of their assets. The portions of the agreement sought to be enforced by these actions are paragraphs 6 and 8 of article second. Under paragraph 6 "the husband shall pay or cause to be paid to the wife for her support the sum of $500 on the first day of

June, 1946, and of each succeeding month *if and so long as the wife is living and remains unmarried*" (emphasis supplied). Paragraph 8 reads: "In the event of the death of the husband during the lifetime of the wife and while she is unmarried, the wife shall be paid not less than a net amount of $10,000 from the proceeds of life insurance policies insuring the life of the husband, the premiums on which shall be paid by him, or, if said net amount of $10,000 has not been provided through life insurance, then there shall be paid from his estate a net amount of $10,000."

Under other provisions of the agreement the wife released all her rights in the property of the husband, including rights of dower, homestead, and surviving spouse. It was provided that "the husband may by will or deed or otherwise dispose of all real and personal property now owned or hereafter acquired by him as if he were unmarried . . . ." The agreement also provided that "The wife hereby accepts the provisions herein made for her in lieu of any and all other claims, rights and provisions for her past, present and future maintenance, or alimony, and covenants that she will not make any further claim on him for support, maintenance or alimony, or in any way demand contribution from him or claim any interest in his property or in his estate in the event of his death. She further releases and relinquishes any and all claims and rights that she may have or hereafter acquire to act as executrix or administratrix of his estate."

On the libel of Alice a divorce decree nisi was entered by the Probate Court for Worcester County on May 24, 1946. The decree recited that the separation agreement had been shown to the court and for that reason no provision for alimony or support was included in the decree.

The monthly instalments of $500 were regularly paid to Alice from June 1, 1946, to September 12, 1955, the date of Reginald's death. No monthly payments have been made since. Reginald died testate. On January 9, 1956, Robert S. Bowditch, one of the executors under the will of Reginald, forwarded a check for $1,000 to Alice. In an accompanying letter he stated that the check was a payment against the

$10,000 due her under the separation agreement "without any prejudice to any other claim you may have against . . . [Reginald] or his estate."

Alice was remarried on October 4, 1957.

To enforce paragraphs 6 and 8 of the agreement two actions of contract were brought.[1] Count 1 of each declaration is to recover the $500 monthly payments under paragraph 6 from September 12, 1955 (the date of Reginald's death), to October 31, 1956, with interest. Under count 2 of each declaration recovery was sought for the $10,000 allegedly due under the eighth paragraph of the agreement less the $1,000 paid on account plus interest.

The cases were tried to a judge of the Superior Court who found for the plaintiff in each case on counts 1 and 2. The cases come here by report. The questions reported are these:

(1) "Under the evidence, rulings and findings . . . was I obliged as a matter of law to find for the defendants on count 1? On count 2?"

(2) "As a matter of law, did any or all of my rulings on evidence constitute prejudicial error? If so, was there such prejudicial error as to entitle the defendants to a new trial?"

1. The defendants argue that the judge erred in finding for the plaintiff on the first count of each declaration because the intention of the parties to the separation agreement was that the monthly payments of $500 would terminate on the death of Reginald.

This court has held that liability for alimony imposed by a decree of court ceases with the death of the husband if the decree is silent on the subject of continuation. *Knapp* v. *Knapp*, 134 Mass. 353, 355. *Stone* v. *Duffy*, 219 Mass. 178, 182. But in *Southard* v. *Southard*, 262 Mass. 278, 280–281, it was said that the cases cited above "merely decided that

---

[1] Both actions are for the same cause and contain identical declarations. One action was brought in the name of Alice as plaintiff and the other by Pero as trustee for her benefit. No question has been raised as to the right of Alice to enforce the agreement in her action and we intend no intimation on the point. The trustee undoubtedly could enforce the agreement in his action. That there may be judgments in both is of no consequence as there can be but one satisfaction.

payments were not to extend beyond the life of the . . . [husband] when the decree was silent on the subject. . . . [The parties] . . . agreed upon the amount and extent of alimony. The court could in these circumstances decree that the alimony should extend beyond the lifetime of the . . . [husband]." To the same effect is *Farrington* v. *Boston Safe Deposit & Trust Co.* 280 Mass. 121. There can be no doubt, then, that the parties could provide by contract for the continuation of payments after the death of the husband. All this the defendants concede, but they argue that under the agreement here the monthly payments to the wife were to cease upon the husband's death.

The provision of the agreement dealing with the monthly payments states that they are to continue "so long as the wife is living and remains unmarried." Nowhere in the agreement is there an express limitation of the obligation to make the payments to the lifetime of the husband. In these respects the agreement is strikingly similar to the decree construed in *Farrington* v. *Boston Safe Deposit & Trust Co.* 280 Mass. 121. There the decree ordered the husband to pay to the wife $416.66 per month "during the term of her life" or until she should remarry. The decree was assented to by the parties. The parties had entered into a settlement embodying similar terms on the same day the decree was entered. The settlement was shown to the court, as was the case here. The wife, who had not remarried, sued the executor of the husband's estate for payments which had come due after the death of the husband. The court held that, notwithstanding the assent of the parties to the decree and their simultaneous agreement, it was concerned only with the intention of the judge and not that of the parties. The court then held that "Payments under the decree manifestly were to continue until . . . [the wife's] death or remarriage, regardless of the death of the . . . [husband]. . . . [I]f the judge intended that payments were to cease with the death of the . . . [husband], it would be assumed that he would not have included in the decree a phrase that the payments were to be made 'during the term of her life,'

for it could not be contended that in the absence of such phrase they would continue after the . . . [wife's] death, and hence its only function can be to show that the payments are to continue during the . . . [wife's] life regardless of the death of the . . . [husband]. The language of the decree indicates an intent to bind the . . . [husband's] estate." 280 Mass. 121, 126. Here we are construing a separation agreement and not a decree. But unless an intention to terminate the payments upon the death of the husband is clearly implied elsewhere in the agreement — and we find none — the cases at bar are governed in principle by the *Farrington* case.

The defendants rely upon that part of the agreement in which the wife agrees to release all her rights in the estate of the husband, including dower, homestead, surviving spouse, and to serve as executrix or administratrix of his estate. However, this release in no way implies that the monthly payments were intended to cease at the husband's death. Rather, the agreement is framed on the assumption that the wife releases her rights in the husband's estate in return for the monthly payments and certain other benefits.

The defendants next argue that the fact that no provision was made for the creation of a fund out of which the payments were to be made after the death of the husband is significant. The short answer to this is that no fund was created to secure the payments during the husband's life.

The defendants also assert that assuming that the agreement provides for payment of a lump sum of $10,000 to the wife upon the death of the husband (which they do not concede) this provision was intended to supplant the monthly payments upon the death of the husband. This construction is strained and unnatural. No express term of the agreement supports it, and the arrangement of the provisions indicates that the $10,000 payment was in addition to the wife's right to the monthly payments.

The defendants have raised numerous other contentions, but they are not substantial and need not be discussed here.

A natural reading of this agreement as a whole leads us to conclude that it contains no limitation, express or implied, on Alice's right to receive the monthly payments so long as she is living and unmarried. The judge did not err in finding for the plaintiff on the first count of each declaration.

2. We now turn to the second count. The defendants urge that the provision for the payment of $10,000 to Alice upon the death of Reginald was intended only as a minimum guaranty to her in case he should die before the monthly payments to her totaled $10,000. As was the case with the monthly payments, the agreement contains no express statement to support the contention. The construction sought for is premised in the main upon the use of the words "not less" in the first clause of the relevant section, which states in part: "the wife shall be paid not less than a net amount of $10,000 from the proceeds of life insurance policies insuring the life of the husband . . . ." The defendants' construction cannot be sustained. It is not apparent to us why the words "not less" were used unless perhaps in case a policy had been taken out Alice would be entitled to accruals in excess of $10,000 but would have in any event not less than $10,000. But, however that may be, we find nothing in these words that supports the defendants' construction.

3. Numerous exceptions were taken by the defendants to rulings on evidence but only one is now pressed. The plaintiffs were permitted to put in evidence Reginald's will which was executed about three years after the separation agreement. In our opinion it is unnecessary to decide whether this evidence was admissible. The sole question before the trial judge was the construction of an unambiguous written contract — a pure question of law. And we are in the same position to decide that question as was the trial judge. Our conclusion that the trial judge's construction of this contract was correct is reached without resort to the will. Thus even if, as we do not decide, the admission of the will was erroneous, the defendants have not been prejudiced, for had the will been excluded the result would be the same.

4. It follows that judgment is to be entered in each case for the plaintiff in accordance with the findings of the trial judge.

*So ordered.*